140 So.2d 189 (1962)
Weldon C. BRECHTEL
v.
Warren LOPEZ, Sr., and Home Indemnity Company.
No. 351.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 1962.
Rehearing Denied May 7, 1962.
Certiorari Denied June 4, 1962.
*190 Herbert J. Garon & Milton E. Brener, New Orleans, for plaintiff-appellee.
Bienvenu & Culver, P. A. Bienvenu and Sydney J. Parlongue, New Orleans, for defendants-appellants.
Before McBRIDE, SAMUEL and HALL, JJ.
LUTHER E. HALL, Judge pro tem.
Weldon C. Brechtel, a New Orleans Police Officer, brought this suit for damages for personal injuries resulting from an accident wherein the police car in which he was riding crashed into a utility pole while he was giving chase to Warren Lopez, Jr., a sixteen year old boy who was unlawfully fleeing the police in his father's automobile for the purpose of avoiding apprehension. The suit was brought against Warren Lopez, Sr., the father of the boy, and the Home Indemnity Company, the liability insurer of the Lopez vehicle.
The suit was tried to a jury and resulted in a 9 to 3 verdict for the plaintiff against both defendants in solido in the sum of $18,000.00. Judgment was entered accordingly and both defendants appealed suspensively and devolutively praying for reversal of the judgment appealed from and in the alternative that the damages awarded be reduced to $7,500.00.
Plaintiff answered the appeal praying that the damages be increased to the sum of $40,000.00 and that as so increased the judgment be affirmed.
There is no substantial dispute as to the facts. At about 12.30 A.M. on the morning of March 29, 1958 plaintiff was on duty as a patrolman of the New Orleans Police Department. He was riding in the right front seat of an unmarked police car being operated by his fellow patrolman, Arthur Bertucci, on Harrison Avenue in City Park. Both were in uniform. As they approached the intersection of Harrison Avenue and Marconi Drive they saw two vehicles approach on Marconi Drive from the direction of Lake Pontchatrain. These two vehicles turned around in Marconi Drive about half a block before reaching Harrison Avenue and lined up facing the lake as if to engage in a race. As plaintiff and his fellow officer watched, the two vehicles suddenly took off at a rapid rate of speed, "burning rubber".
Plaintiff who was in command of the police car by reason of seniority over his fellow patrolman, Bertucci, gave orders to Bertucci to follow the cars and see what they were up to. The police car took off in pursuit and "clocked" the speed of the two cars at 85 miles per hour. Thereupon Brechtel sounded his siren, but the cars did not slacken speed. At a signal from the car on the left, later identified as the Lopez car, the other car made a right hand turn into Robert E. Lee Boulevard and disappeared. The Lopez car, still going at an excessive rate of speed, continued straight to Lakeshore Drive pursued by the police. It turned left on Lakeshore Drive, turned left again at the intersection of Lakeshore Drive and Canal Boulevard and speeded on Canal Boulevard in the direction of the river, the whole time being closely pursued by the police, who were sounding their siren at frequent intervals.
When he "clocked" the cars on Marconi Drive at 85 miles per hour, plaintiff reported the fact over the radio to the dispatcher at police headquarters who instructed plaintiff *191 to keep him informed as to the speed and direction of the cars so that he might set up a road-block.
On Canal Boulevard the Lopez car reached speeds up to 105 miles per hour. The police car managed to stay in close pursuit two or three blocks behind but never gained. At Filmore Street the Lopez car executed a right turn into Filmore at a time when the police car was approximately a block and a half to the rear. The two vehicles were travelling at a speed of 85 to 90 miles an hour when the Lopez car started to slow for the turn.
The accident in which plaintiff was injured then occurred. The only testimony as to what happened is that given by Officer Bertucci, the driver of the police car. Plaintiff, himself, saw the Lopez car turn into Filmore but remembers nothing beyond that.
Officer Bertucci's account of the accident is as follows:
"Q. You talked about when the car reached Filmore Street. How far behind that car was (sic) you as that car approached Filmore Street?
"A. A block and a half or better.
"Q. And what happened as it approached Filmore Street?
"A. It turned to the right. You could see he was slowing up because his tail-light would flicker.
"Q. Now I want you to tell the jury as best you can remember, and as carefully as you can, what happened when you saw that car make a turn into Filmore Street.
"A. I applied my brakes slowly. My speed was already cut down, and I applied my brakes, and as I did the vehicle somewhat, like the back end jammed on me, veered to the left. It was going toward the neutral ground, and I pulled it out of the spin it was going into and I started going straight again, and automatically * * * I never applied the brakes again. It grabbed by itself and went to the neutral ground. It jumped the neutral ground and hit the utility pole, and from there I was thrown out.
"Q. Do you know what your speed was at the time or approximately at the time that you first started to apply the brakes to slow up?
"A. About eighty-five to ninety, something like that.
"Q. And at that time you were gaining on the car in front of you.
"A. No sir, we wasn't."
On cross examination Officer Bertucci testified as follows:
"Q. You say he was half a block from Filmore when you saw his lights go on, and you knew he was going to turn?
"A. Right, and I started to slow up.
"Q. You applied your brakes.
"A. Right.
* * * * * *
"Q. Did you see him make his turn.
"A. I did.
"Q. And did you lose sight of him as he went into Filmore Street.
"A. Yes, because my car went into a spin, like.
* * * * * *
"Q. It was after he made his turn into Filmore, and you lost track of him that you lost control of your car?
"A. Right.
"Q. And I believe you have testified that you were attempting to slow up, so you applied your foot to the brakes and one of the brakes grabbed?
"A. In the rear, right.
"Q. The left wheel, I think you said?
"A. I think it's the left wheel.

*192 "Q. And I believe you mentioned something else about after the brake grabbed what happened to the car?
"A. It spun towards the left.
* * * * * *
"Q. Towards the neutral ground.
"A. Yes.
* * * * * *
"Q. Did you then get up on the neutral ground and run into this * * *
"A. No, not then. I straightened the vehicle out and I went about fifteen or twenty feet further, and without applying the brakes or anything it jammed again and I straightened it out, and it jammed again, and then jumped the neutral ground and hit the utility pole and I was thrown out. Next it hit the tree. I learned that later.
"Q. You applied your brakes once.
"A. Right.
"Q. And would you say that as a result of the application of your brakes you lost control of your car and the accident happened?
"A. Right. I had control of my car all up until it hit the neutral ground. It was sliding, but I had control of it.
* * * * * *
"Q. If your brake hadn't grabbed as you said it did, you expected to be able to bring your car to a sufficiently slow speed so you could have made the turn, is that right.
"A. Right.
"Q. And the grabbing of your brakes made you lose control of your car since you were going so fast, isn't that true.
"A. Right."
The police car never reached the intersection of Filmore and Canal Boulevard. It came to a stop, after striking and breaking a utility pole, on the neutral ground of Canal Boulevard, one-quarter of a block from Filmore Street.
The testimony of young Lopez concerning his pursuit by the police does not differ from that of the police officers in any material respect. He testified that he and a friend planned to race their cars on Marconi Drive; that during the race he noticed bright lights following them, suspected it was the police, and signalled his friend to turn out Robert E. Lee Boulevard while he continued toward the lake; that he later heard the siren and knew then that the police were in pursuit; that he made the turn from Canal Boulevard into Filmore in order to evade them; that after he turned into Filmore he proceeded a block and turned left into Louis XIV Street; that it was at this moment he heard "some loud tire squealing and a loud noise"; that when he heard the noise he "thought maybe they (the police) jumped the curb and went into the neutral ground or something"; that he drove home but immediately returned to the scene of the accident with a friend but discussed the matter with no one. In addition young Lopez testified that he was 16 years old at the time of the accident; was residing with his father and mother at the corner of Canal Boulevard and Polk Street which is approximately ten blocks further from the lake than Filmore Street; and that he was driving the car with his father's permission.
It is clear that the conduct of young Lopez, in engaging in a race on the city streets, in continuing to operate his car at grossly excessive speeds, in failing to stop when he heard the police siren, and in making a right turn without signalling his intention to do so, was unlawful throughout and in violation of the traffic code of the city of New Orleans, and hence such conduct constituted negligence per se.
Appellants argue that the negligence of young Lopez was not the proximate *193 cause of the accident; that none of his acts caused or contributed to the accident; that the proximate cause of the accident was either defective brakes on the police car, or the faulty application of the brakes by Officer Bertucci.
There is no evidence whatever in the record that there was any defect in the brakes of the police car. All of the evidence indicates that the brakes had been functioning perfectly throughout the evening when the vehicle was operating at normal speeds. The only proof of what happened is found in the quoted testimony of Bertucci, and in our opinion there is no basis in this testimony to assume either that the brakes were defective or that they were improperly applied. Such an assumption would ignore the fact that speeds of 85 miles per hour or more are inherently dangerous and invite disaster at any instant and upon the slightest occurrence that might otherwise present no emergency.
In our opinion the proximate cause of the accident was speed, the grossly excessive speed of young Lopez which induced the speed of the police, who not only had the right but the duty to attempt to overtake and apprehend him. The effect of the speed continued down to the very moment of the accident. Speed, if not the proximate cause of the accident, was at least a concurring cause with the "grabbing" of the brakes which in our opinion was not unrelated thereto.
The most that can be said from the appellant's standpoint is that the grabbing of the brakes was an intervening efficient cause which broke the chain of causation from the original negligent acts of young Lopez. However, the mere fact that other forces have intervened does not absolve the defendants where the injury might reasonably have been foreseen. See 65 C.J.S. verbo Negligence § 111, commencing at p. 685.
In Jackson v. Jones, 224 La. 403, 69 So. 2d 729, the Supreme Court held that in determining whether a person who has created a dangerous situation, is liable for injury which results to another by virtue thereof, notwithstanding an intervening cause, the criterion is whether the person who created the danger could or should reasonably have foreseen that the accident or injury might occur.
In the instant case young Lopez could or should have foreseen that the speed at which he induced the police to drive might produce almost any kind of an accident, and as a matter of fact he did anticipate an accident because his very first thought on hearing the "tire squealing and a loud noise" was that perhaps the police had "jumped the curb and gone into the neutral ground or something".
Appellants further argue that plaintiff was guilty of contributory negligence in riding in a vehicle at such high speeds without making any effort to have the driver of the car reduce his speed. They argue further that Bertucci was guilty of negligence in driving at such speed and attempting to apply his brakes while travelling so fast and that Bertucci's negligence is imputable to plaintiff, his superior officer, who was in command of the movements of the car.
We find no negligence whatever either on the part of plaintiff or on the part of Bertucci. They not only had a legal right but a duty to pursue and attempt to apprehend young Lopez. It will not do to hold that the very performance of such duty constitutes a legal defense by the law violator against a suit for damages.
Coming now to the question of quantum we find that the injuries suffered by plaintiff were a rupture of the bladder, rupture of the urethra and prostate, separation of the pelvis, separation of the sacroiliac, palsy of the left peroneal nerve, chip fracture of the left symphysis, injury to the arm requiring a skin graft, damage to the nerves controlling erection and ejaculation and residual phebitis. He was rendered *194 unconscious by the force of the impact and was removed to the Charity hospital where he underwent emergency surgery for over two hours, was thereafter confined to the hospital for over three months for the first ten weeks of which he was in pelvic traction with three catheters inserted in his penis and other areas below the navel. After leaving the hospital he was confined at home for another two and a half months. During this time it was discovered that he had a left foot drop resulting from the injury to his left peroneal nerve, and a brace was prescribed which he wore for about six months. After discontinuing the brace, plaintiff was required to wear an elastic stocking to prevent swelling. The left drop foot is permanent, and constitutes a handicap for many types of police work. Plaintiff faces the possibility of having strictures at the area of the injury to the urethra and to prevent this he has had to have urethral dilations or "soundings" at frequent intervals. He is still required to have these "soundings" once a year. In addition plaintiff suffered for some months from grave apprehension as to his possible impotency and sterility, made more intense by his impending marriage.
Plaintiff has fully recovered from his injuries except for the drop foot, which is permanent, and for the possibility of developing a stricture. He was able to return to light office duty on the police force five and a half months after the accident and is now doing the same work he was doing before he was injured. He sustained no loss of income because he received his regular wages from the police department. His medical expenses were also paid by the city of New Orleans.
In view of the nature and severity of plaintiff's injuries we are of the opinion that the jury's award of $18,000.00 is inadequate, and should be increased to the sum of $22,500.00.
Inasmuch as the liability policy sued upon is limited to $20,000.00 for injury to one person the judgment against Home Indemnity Company must be restricted to that amount.
For the foregoing reasons the judgment appealed from is amended so as to increase the principal amount thereof to $22,500.00, said judgment to be in solido against Home Indemnity Company up to but not beyond $20,000.00. As so amended and in all other respects the judgment is affirmed.
Amended and affirmed.