426 A.2d 691

COMMONWEALTH of Pennsylvania, Appellant,

v.

Calvin Mathias LANG, Jr.

COMMONWEALTH of Pennsylvania

v.

Calvin Mathias LANG, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 3, 1980.

Filed Feb. 27, 1981.

Robert G. Teeter, Assistant District Attorney, Gettysburg, for Commonwealth, appellant in No. 56 and appellee in No. 70.

Spero T. Lappas, Harrisburg, for appellant in No. 70 and for appellee in No. 56.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

The instant appeals come to us from an order of the Court of Common Pleas of Adams County granting defendant Lang's motion to quash an information charging him with homicide by vehicle for the death of Officer James Redding of the New Oxford Borough Police Department, whose unhappy demise was allegedly occasioned by his pursuit of the defendant in an attempt to arrest him for failure to heed a stop sign, and for speeding.

The Commonwealth's Homicide by Vehicle Statute reads: "Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of

the first degree, when the violation is the cause of death." Act of 1976, June 17, P.L. 162, No. 81 § 1, eff. July 1, 1977. 75 Pa.C.S. § 3732.

The instant information reads:

"The District Attorney of Adams County, by this information charges that, on or about October 22, 1978, in said County of Adams, Calvin Mathais Lang, Jr. did, in Oxford Township, unlawfully and unintentionally cause the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, to wit:—he did while operating a Harley David-son Motor Cycle, Bearing Pennsylvania Registration # 8V125 violate Sections 3323, 3733 and 3361 of the Pennsylvania Vehicle Code, where he did fail to drive at a safe speed, he did fail to stop at a stop sign and did flee and attempt to elude a police officer, said officer while in pursuit of defendant died as a result of an accident while attempting to stop the above defendant after he committed the violations; said officer James A. Redding, of the New Oxford Borough Police Department.

All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

Lang moved to quash the information, which motion was granted by the order of March 12, 1979. These appeals followed.

Among his omnibus pretrial motions, Lang included three separate motions to quash the information.[1] Two of the motions to quash raised constitutional questions, while the third contended that the information failed to allege sufficient causation to sustain criminal liability. On February 16, 1979, the court held oral arguments on Lang's omnibus motions, and by an order of the same date required the

---

[1] The first motion to quash assailed the statute along vagueness grounds and also because it assertedly imposes criminal liability without requiring a showing of *mens rea*.

The second motion argued the lack of sufficient causation to sustain criminal liability.

The third motion to quash was essentially a repetition of the first.

submission of briefs on the causation issue. The briefs were timely submitted, and the court ordered the information quashed on March 12, 1979. The order was accompanied by a memorandum opinion wherein the court considered at length the causation issue. The lower court did not consider the constitutional questions in detail, being of the opinion that they had been adequately put to rest by its previous finding of constitutionality in *Commonwealth v. Beams*, 10 D. & C.3d 616 (1978).[2] The Commonwealth has appealed the court's finding that the information does not set forth sufficient causation to hold Lang criminally liable. Lang cross-appealed the court's ruling on the statute's constitutionality.

Although the information states no more than that Officer Redding "died as a result of an accident while attempting to stop" the defendant for his Vehicle Code violations, it appears that the lower court considered additional facts in reaching its decision.[3] The court considered the following "facts". Officer Redding sighted the defendant speeding along New Oxford's Pleasant Street, activated both siren and flashing lights, and gave chase. Lang attempted to elude apprehension and a "high speed vehicle chase" followed, during the course of which Lang failed to stop at a stop sign. The chase proceeded through New Oxford, coming eventually to Kohler Road. Lang negotiated a "dangerous curve" in that road and proceeded on. Officer Redding was not so fortunate. He lost control of his vehicle on the same curve, crossed the median line, and struck a tree on the other side of the road. He died the same day from the injuries he sustained in the accident.

2. *Beams* rejected equal protection and due process arguments. It did not consider the "cruel and unusual punishment" question raised there, as here, because it felt the issue was not then ripe, there having been neither conviction nor sentence imposed.

3. We note that these additional facts are not dehors the record, as they appear in the Commonwealth's answer to the motions to quash the information, and were briefed and argued by both sides without objections from either in the lower court proceedings.

The lower court based its decision that there was no legal causation in the instant case on its reading of Section 303 of the Crimes Code, 18 Pa.C.S. § 303, and two cases Lang strongly argued in support of his position, *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961), and *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958). Section 303, one of the preliminary provisions of the Crimes Code, reads in pertinent part:

(a) GENERAL RULE.—Conduct is the cause of a result when:

(1) it is an antecedent but for which the result in question would not have occurred; and

(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

\* \* \* \* \* \*

(c) DIVERGENCE BETWEEN PROBABLE AND AC-TUAL RESULT.—When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

(1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that cause; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

(d) ABSOLUTE LIABILITY.—When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the conduct of the actor.

18 Pa.C.S. § 303(a), (c) & (d).

In considering Section 303, the lower court stated the following:

> "It might seem at first glance that his case falls securely within the parameters of the section. It can be argued that the police officer would not have chased the defendant had the defendant not fled. It can also be argued that it is foreseeable that someone can be killed as a result of a high speed chase. Thus, it would appear on first consideration, that defendant's action was the legal cause of the death and that defendant can be held criminally responsible."

The lower court correctly concluded that the causation test of Section 303 can be met in the instant case. However, the court then went on to consider the effect of *Root* and *Redline*. The lower court found that those cases clearly lead to the conclusion that the instant information does not allege sufficient causation and must be quashed. It is at this fork that we take a different road from that taken by the lower court, for we hold that it erred in relying on *Root* and *Redline* to decide the case. For the reasons set out below we reverse and remand the case for further proceedings below.

Chief Justice Jones' opinion in *Root* set out the facts of that case:

> The testimony, which is uncontradicted in material part, discloses that, on the night of the fatal accident, the defendant accepted the deceased's challenge to engage in an automobile race; that the racing took place on a rural 3-lane highway; that the night was clear and dry, and traffic light; that the speed limit on the highway was 50 miles per hour; that, immediately prior to the accident, the two automobiles were being operated at varying speeds of from 70 to 90 miles per hour; that the accident occurred in a no-passing zone on the approach to a bridge where the highway narrowed to two directionally-opposite lanes; that, at the time of the accident, the defendant was in the lead and was proceeding in his right-hand lane of travel; that the the deceased, in an attempt to pass the

defendant's automobile, when a truck was closely approaching from the opposite direction, swerved his car to the left, crossed the highway's white dividing line and drove his automobile on the wrong side of the highway head-on into the oncoming truck with resultant fatal effect to himself. *Root*, supra, 403 Pa. at 573, 170 A.2d at 310–311.

In deciding *Root*, the Supreme Court considered our opinion in *Commonwealth v. Levin*, 184 Pa.Super. 436, 135 A.2d 764 (1957). *Levin*, like *Root*, involved a fatal automobile race. However, in *Levin* the defendant swerved dangerously to one side cutting off the path of his competitor, causing the competitor to lose control of his automobile and to smash into a tree, thereby killing a passenger in the competitor's vehicle. In *Root*, although both the defendant and the deceased were involved in an illegal race, the defendant did no more than participate in the race. In effect, defendant's actions there could not have been the direct cause of the death, because the decedent's voluntary participation in the race superseded, in the chain of causation, the defendant's agreement to participate in the illegal race.

*Redline* involved a felony-murder case where "[t]he defendant was convicted of murder in the first degree . . . for the death of his co-felon from a gunshot wound inflicted by a police officer endeavoring to apprehend the two culprits who were attempting to flee the scene of their armed robbery." *Commonwealth v. Redline*, 391 Pa. at 488, 137 A.2d at 473. *Redline* dealt a mortal blow to an extension of the felony-murder doctrine developed in *Commonwealth v. Almeida*, 362 Pa. 596, 68 A.2d 595 (1949) and *Commonwealth v. Thomas*, 382 Pa. 639, 117 A.2d 204 (1955), two cases which introduced the proximate cause theory from tort law into felony-murder prosecutions. *Redline* repudiated *Almeida* and overruled *Thomas*. *Almeida* was later specifically overruled in *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970). In each of these four cases the fatal shot was fired by one other than a participant in the underlying felony. As the Supreme Court said in *Redline* :

In adjusting a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing*. The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. "It is necessary ... to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony ... and not merely coincidence": Hitcher, *Op. cit. supra*, citing Perkins, Malice Afore-thought, 43 Yale L.H. 537 (1934). *Redline*, supra, 391 Pa. at 495, 137 A.2d at 476.

The fact that the deaths prosecuted in *Almeida, Thomas, Redline* and *Myers* arose coincident to the commission of the underlying felony smacks of the tort law theory of causation. Perhaps much of the confusion developed from the failure to distinguish clearly between the law of conspiracy—these cases involved felonies with multiple participants—which permits the imputation of acts and their legal results from one *actor* in a conspiracy to another, and the common law doctrine of felony-murder which permits the imputation of malice from one *act* to another. The failure to make this distinction in *Almeida* and *Thomas* gave rise to a legal setting wherein the bases for criminal liability closely resembled the theory of proximate causation, a theory unacceptable to our notions of criminal justice because it is grounded in an expansive concept of foreseeability, as that concept affects the determination of legal causation.

*Root* and *Redline* make it clear that the causation theory properly applied in criminal cases is not that of proximate cause. As the court said in *Root*:

Legal theory which makes guilt or innocence of criminal homicide depend upon such accidental and fortuitous circumstances as are now embraced by modern tort law's encompassing concept of proximate cause is too harsh to be just.

\* \* \* \* \* \*

To summarize, the tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide and more direct causal connection is required for conviction: *Commonwealth v. Redline*, supra, 391 Pa. at 504–505, 137 A.2d at 472. *Root*, supra, 403 Pa. at 576, 580, 170 A.2d at 312, 314.

See also *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976); *Commonwealth v. Skufca*, 457 Pa. 124, 321 A.2d 889 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 389 A.2d 1113 (1978).[4]

Instantly, it was for the lower court to rule as a matter of law whether the information, and the additional facts as argued and briefed, establish a direct causal link between the defendant's violations of the Vehicle Code and Officer Redding's death which could sustain a jury finding of criminality. The lower court was of the opinion that, but for *Root* and *Redline,* such a causal link could be shown. We disagree with the court's conclusion, because we find this case clearly distinguishable from *Root.*

**4.** In *Commonwealth v. Allen*, 475 Pa. 165, 170, 379 A.2d 1335, 1339 (1977) Justice Nix included the following as a footnote:

In considering this question of causation, this Court rejected the tort "but for" theory as being too remote a basis upon which to predicate criminal responsibility. *Commonwealth v. Redline, supra.* In *Redline*, we repudiated the reasoning in *Commonwealth v. Thomas*, 382 Pa. 639, 117 A.2d 204 (1955) and *Commonwealth v. Almeida*, 362 Pa. 596, 68 A.2d 595 (1949). In *Thomas* and *Almeida* we had indicated that a felon could be held responsible for the death caused by police or a victim resisting the commission of the felony. The rationale for both of these decisions was based upon the view that the death would not have occurred "but for" the attempt to commit the underlying felony. In essence, our holding in *Redline* stands for the proposition that the mere willingness to commit the underlying felony would not result in criminal liability for a death that was a "coincidence" but not a "consequence" of the felony. *Commonwealth v. Redline, supra*, 391 Pa. at 495, 137 A.2d at 476. *See also, Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970). Thus, where there is a single perpetrator of the crime it must be determined that some act of his was the direct cause of the death, and it is not sufficient to show his commission of the underlying felony alone.

■ Recalling the situation in *Root,* two "civilians" had freely and voluntarily engaged in a race, whereas here, we are dealing with one "civilian" and a police officer. Having observed Lang speeding, Officer Redding was duty—bound to pursue him, which duty arguably became more compelling with each Vehicle Code violation.[5] In a sense, Officer Redding was bound as if by a chain to Lang's vehicle; and, at the speed Lang was travelling, it was foreseeable the chain would break, hurtling Officer Redding to his death. Lang knew or should have known that his actions, speeding and attempting to elude arrest, were likely to result in injury to someone: either to himself, to some innocent third party, or to the pursuing police officer.[6] From the information and additional facts, it would appear that a jury could reasonably conclude, beyond a reasonable doubt, that Lang's conduct *directly* resulted in Officer Redding's death and was not a fortuitous or coincidental event unrelated to the direct result of his conduct.

■ In his cross-appeal Lang has raised several constitutional questions concerning the validity of the homicide by vehicle statute. We have considered both the vagueness argument and the criminality-without-culpable-conduct argument previously, and see no need to repeat ourselves here, other than to say that the questions have been settled against Lang's line of argument. *Commonwealth v. Barone,* 276 Pa.Super. 282, 419 A.2d 457 (1980). See also *Commonwealth v. Field,* 490 Pa. 519, 417 A.2d 160 (1980); *Commonwealth v. Burt,* 490 Pa. 173, 415 A.2d 89 (1980); *Common-*

---

**5.** This is particularly true in light of a case such as *Commonwealth v. Slaybaugh,* 468 Pa. 618, 364 A.2d 687 (1976), which makes stopping a driver almost imperative if there is to be a conviction.

**6.** There are several cases, albeit in other jurisdictions, which permit recovery in tort from the Vehicle Code violator by the pursuing police officer injured in circumstances substantially similar to those here. The cases set out below, although not helpful on the causation issue before us, do illustrate that such accidents have been viewed as *foreseeable* by courts other than ours. See *MacDonald v. Hall,* Me., 244 A.2d 809 (1968); *City of St. Petersburg v. Shannon,* 156 So.2d 870 (1963); *Brechtel v. Lopez,* 140 So.2d 189 (1962); *McKay v. Hargis,* 351 Mich. 409, 88 N.W.2d 456 (1978).

*wealth v. Nay*, 281 Pa.Super. 226, 421 A.2d 1231 (1980). Additionally, Lang argues that the statute imposes a cruel and unusual punishment under the standards of both the federal and state constitutions. As of yet, there has been neither a conviction under the statute, nor the imposition of sentence. Therefore, the question is not ripe for our review. See *Commonwealth v. Klobuchir*, 486 Pa. 241, 248, 405 A.2d 881, 885 (1979); *Commonwealth v. Galloway*, 476 Pa. 33, 382 A.2d 1196 (1978); *Commonwealth v. Jenkins*, 273 Pa.Super. 227, 417 A.2d 251 (1979). See also *United Public Workers of America v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1957).

Accordingly, the order of the lower court quashing the information is reversed and the case is ordered remanded.