COMMONWEALTH *vs.* KEVIN V. DIAZ.

Middlesex.    September 12, 1984. — November 29, 1984.

Present: BROWN, KASS, & SMITH, JJ.

*Practice, Criminal,* Instructions to jury, Verdict, Deliberation of jury, Burden of proof. *Motor Vehicle,* Homicide, Operating to endanger, Leaving scene of accident.

At the trial of complaints charging the defendant with vehicular homicide, driving to endanger, and leaving the scene of an accident after causing an injury to a person, the judge's additional instructions to the jury on the elements common to the crimes charged, which he gave in response to the apparent inconsistency in the jury's arriving at verdicts of guilty of the latter two offenses, while being unable to agree on a verdict in regard to vehicular homicide, did not, as claimed by the defendant, have the effect of directing the jury to return a guilty verdict on the charge of vehicular homicide. [31-36]

At the trial of complaints charging certain motor vehicle offenses, including homicide by motor vehicle as defined in G. L. c. 90, § 24G, the judge's instructions to the jury with respect to the element of causation articulated satisfactory standards to guide them in finding whether the manner in which the defendant operated his automobile resulted in the victim's death. [36-37]

At the trial of complaints charging the defendant with vehicular homicide, driving to endanger, and leaving the scene of an accident after causing injury to a person, the judge did not err in refusing to charge the jury that the burden was on the prosecution to prove to a moral certainty and beyond a reasonable doubt that there was no intervening cause which led to the fatality where his charge, viewed in its entirety, informed the jury that it was the Commonwealth's burden to prove all the elements of each crime. [37-39]

COMPLAINTS received and sworn to in the Central Middlesex Division of the District Court Department on July 6, 1982.

On appeal to the jury session the cases were tried before *Mel L. Greenberg,* J.

*Nona E. Walker* for the defendant.

*Karen J. Kepler*, Assistant District Attorney, for the Commonwealth.

KASS, J. As might be expected on a holiday weekend, traffic on July 5, 1982, was moderate to heavy on Route 128 as it coursed through Lexington. Several witnesses, the jury could have believed, saw the defendant's car travelling much faster than the fifty-five miles per hour at which traffic was moving (A State trooper put the defendant's speed at ninety miles per hour) and noticed that car veering from lane to lane. In the course of his high speed lane switching, Diaz — there is no dispute that he was the driver — was seen to be fishtailing and at the edge of control, if not beyond it. Diaz overtook on its left a vehicle in the third lane operated by a man named Grueter and spun or skidded in front of it. Grueter tried to steer around the Diaz car and, in the process, lurched across the median strip, over the guard rail, and into an oncoming (northbound) lane of traffic. A collision ensued between the Grueter car and a car whose driver had the misfortune to be travelling in the northbound lane. That driver was killed in the accident. The defendant's car was not itself involved in any collision. Diaz stopped and approached the accident scene, apologized to Mrs. Grueter, went back to his car and, without further ado, drove off. His car and license plate number, had, however, been noticed.

Diaz was charged with homicide by motor vehicle (G. L. c. 90, § 24G), driving to endanger (G. L. c. 90, § 24), and operating a motor vehicle after knowingly causing injury without making known his name, residence, and the registration number of his automobile (G. L. c. 90, § 24). He was found guilty on all counts in a bench trial in the District Court and appealed to a jury-of-six session in which he was again convicted on all three complaints. The conviction of driving to endanger was placed on file. Diaz appeals on the grounds that the trial judge: (1) in the course of a supplementary instruction to the jury in effect directed a finding of guilty of vehicular homicide; (2) instructed the jury in a manner which allowed the jury to apply a civil law standard of proximate cause; and (3) instructed the jury in a manner which unconstitutionally

shifted the burden of proof on one element of two of the crimes charged. We affirm.

1. *Effect of the supplementary charge.* After a period of deliberation, the jury sent word to the judge that they could not reach a unanimous verdict on one of the three complaints with which Diaz stood charged. The judge instructed the jury along the lines recommended in *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 97-102 (1973), but after some further period (the transcript does not contain precise times) the jurors pronounced themselves still deadlocked on one count. Counsel for the parties recommended to the judge that he receive the verdicts arrived at. If the jury were hung on operating to endanger, as counsel and the judge suspected, then declaration of a mistrial on that complaint seemed acceptable and the Commonwealth indicated that a new trial was unlikely.

As matters transpired, the jury had arrived at verdicts of guilty of operating to endanger and leaving the scene of an accident, but could not agree on vehicular homicide. There was an element of illogic to that. Vehicular homicide, as defined in G. L. c. 90, § 24G, inserted by St. 1976, c. 227, presupposed operation of a "motor vehicle recklessly or negligently so that . . . lives or safety . . . might be endangered." Leaving the scene of an accident presupposed causing injury to a person, G. L. c. 90, § 24.[1] Therefore, if the jury had found Diaz guilty of driving to endanger and causing injury, including Cerrone's death, they had also found the elements of vehicular homicide. The judge decided not to accept the partial verdict and to reinstruct the jury on the common element of causation in two of the complaints, a course of action he announced to counsel at a side bar conference and to which neither party objected. See and compare *Commonwealth* v. *Liakos,* 12 Mass. App. Ct. 57, 63 (1981).[2]

---

[1] The parties had stipulated that Anthony Cerrone, the driver of the northbound vehicle, had died as a result of injuries sustained in the accident.

[2] Before a verdict is effective, it must have been agreed upon, inscribed upon a verdict slip, returned in open court by the foreman's word of mouth, recorded by the clerk, inquired into of the jurors by the clerk, and proclaimed. See as to the ritual, *Commonwealth* v. *Kalinowski,* 12 Mass. App. Ct. 827,

In his clarifying instruction, the judge asked the jurors to deliberate again on the two counts as to which they had agreed on a verdict. He called to their attention that if they were to find Diaz not guilty of vehicular homicide, they must also find him not guilty of leaving the scene of an accident after causing injury to a person. The judge went on to define once again the components of the crime of leaving the scene of an accident, emphasizing the causation and knowledge elements, i.e., that the jury must, to convict, find that Diaz knew that he had caused injury to Mr. Cerrone. The judge then spoke as follows:

> "And with regard to the offense for which you have been unable to reach a verdict, obviously that is the offense charging him with negligently operating his motor vehicle and causing the death of Mr. Cerrone. That particular offense is a combination of operating a motor vehicle negligently, upon which you have returned a verdict; and the causation issue, upon which you have returned a verdict with regard to the leaving the scene.
>
> "So that you have got to be able to piece together the facts as you find them to be to have a consistent verdict. These verdicts, as you presently have presented them to court, are inconsistent as a matter of law, so I'm going to ask you to return to your deliberations and again go over the facts of the situation as I have instructed you, and try to reach a verdict that would be consistent with the law as I have instructed you on it and with the facts obviously as you find them to be."

Defense counsel did not expressly object to the supplementary charge but did ask the judge also to instruct the jury again on causation. Counsel expressed her concern that, left as it was, the charge "sounds to me like directing a verdict of guilty on the vehicular homicide." This forms the basis for the first

829-831 (1981). See Mass.R.Crim.P. 27(a), 378 Mass. 897 (1979). See also Smith, Criminal Practice and Procedure § 1967 (2d ed. 1983). None of the last four steps had occurred as to the two counts upon which the jury had reported agreement.

argument which Diaz presses on appeal: that the trial judge's instructions had the effect of directing the jury to return a guilty verdict on the charge of vehicular homicide.

It is well understood that jury verdicts will not be disturbed because they are factually inconsistent.[3] *Dunn* v. *United States*, 284 U.S. 390, 393-394 (1932). *Commonwealth* v. *White*, 363 Mass. 682, 684-685 (1973). The rule recognizes the power, possibly salutary, of juries to compromise and to act out of leniency. See *United States* v. *Martorano*, 557 F.2d 1, 9 (1st Cir. 1977), cert. denied, 435 U.S. 922 (1978). See also the concurring opinion of Quirico, J., in *Commonwealth* v. *Dickerson*, 372 Mass. 783, 811-812 (1977). That principle does not, however, deter a trial judge from instructing a jury, before a verdict is recorded, about the elements common or uncommon to the crimes charged and to call attention to the jurors' misunderstanding of previous instructions. *Commonwealth* v. *Haskins*, 128 Mass. 60, 61-62 (1880). "[J]urors may have the power to ignore the law, but their duty is to apply the law as interpreted by the court, and they should be so instructed." *United States* v. *Boardman*, 419 F.2d 110, 116 (1st Cir. 1969), cert. denied sub nom. *Boardman* v. *United States*, 397 U.S. 991 (1970).[4] Compare *Commonwealth* v. *Dickerson*, 372 Mass.

[3] The judge perhaps used an infelicitous phrase when he told the jury that the preliminary verdicts were inconsistent "as a matter of law." Verdicts are inconsistent as a matter of law when a jury returns verdicts of guilty for mutually exclusive crimes, e.g., convictions of larceny and receiving stolen goods, where the goods involved in both charges are the same. "[I]n law the guilty receiver of stolen goods cannot himself be the thief; nor can the thief be guilty of a crime of receiving stolen goods which he himself had stolen." *Commonwealth* v. *Haskins*, 128 Mass. 60, 61 (1880). See also *Milanovich* v. *United States*, 365 U.S. 551, 554-556 (1961); *Commonwealth* v. *Carson*, 349 Mass. 430, 435, 436 (1965). The instant case involved verdicts which were factually inconsistent in that the facts supporting convictions of operating to endanger and leaving the scene are inconsistent with facts supporting an acquittal of vehicular homicide.

[4] Defendants do not have a right to an instruction which expressly calls attention to the power of juries to return inconsistent verdicts. *United States* v. *Sawyers*, 423 F.2d 1335, 1341 (4th Cir. 1970). *United States* v. *Simpson*, 460 F.2d 515, 518-520 (9th Cir. 1972). *United States* v. *Wiley*, 503 F.2d 106, 107 (8th Cir. 1974). *Washington* v. *Watkins*, 655 F.2d 1346, 1374 n.54 (5th Cir. 1981), cert. denied, 456 U.S. 949 (1982). *United States* v. *Trujillo*, 714 F.2d 102, 105-106 (11th Cir. 1983).

at 797 (Hennessey, C.J., for the court) and 800 (Quirico, J., concurring). From the vantage of a defendant, an instruction concerning the common elements of separate charges may be discomfiting, but a court is not bound to "forbear stating what the law is upon a given state of facts." *Sparf & Hansen* v. *United States*, 156 U.S. 51, 101 (1895). It is appropriate for the judge to tell a jury what verdict to bring in if the jurors find certain facts. *Commonwealth* v. *Boyd*, 367 Mass. 169, 186 (1975). If, as the court observed in *Commonwealth* v. *Dickerson*, 372 Mass. at 797, a charge should include an instruction that the jury "have a duty, if they conclude that the defendant is guilty, to return a verdict of guilty of the highest crime which has been proved beyond a reasonable doubt against the defendant," even though the jury has the power[5] to do otherwise, then, by extension of that principle, a judge may properly instruct a jury to return consistent verdicts, even though the jurors have the power to do otherwise.

That instruction must stop short of coercing a verdict of guilty. A judge crosses the line between enlightening the jurors' understanding and coercing them when "he overcomes the will by the weight of his authority." *Horning* v. *District of Columbia*, 254 U.S. 135, 139 (1920) (Brandeis, J., dissenting). See also *Commonwealth* v. *Hebert*, 379 Mass. 752, 755 (1980). Our cases are not without example: *Commonwealth* v. *Sneed*, 376 Mass. 867, 872-873 (1978) (judge adopted advocacy role in instructing jury); *Commonwealth* v. *Hebert, supra*, at 754-755 (disregarding a juror's reservations when polling a jury and explaining to that juror that the evidence for conviction was clear); *Commonwealth* v. *Webster*, 391 Mass. 271, 272-277 (1984) (judge interrogated a single juror who held a minority position — for acquittal — in a manner likely to be a signal to the other jurors that the judge disagreed with the single juror's

---

[5] In his concurring opinion in *Commonwealth* v. *Dickerson*, 372 Mass., Quirico, J., makes the interesting observation at 811-812, that juries have no *right* to return verdicts which are contrary to the facts and the law, but that, as a practical matter, they have *power* to do so because the Commonwealth cannot appeal from a verdict of acquittal or from conviction of a lesser crime.

view of the evidence); *Commonwealth* v. *Borges*, 2 Mass. App. Ct. 869, 870 (1974) (judge's comment on the evidence threw the judge's opinion onto the scale decisively against the defendant); *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 369 (1977) (in a case where the evidence was not the same against both defendants, the judge said to the jury in the course of his instructions, "[I]t is inconceivable that you could find one of the defendants guilty and one not guilty"); *Commonwealth* v. *Anslono*, 9 Mass. App. Ct. 867, 868 (1980) (charge commanded the result).

Nothing resembling that sort of placing of the judicial thumb on the scale occurred in the instant case. In assessing the charge we review the impression which it makes as a whole. *Commonwealth* v. *Quigley*, 391 Mass. 461, 467 (1984). *Commonwealth* v. *Collett*, 17 Mass. App. Ct. 913, 914 (1983). When, as here, the attack is on additional instructions, delivered after a period of jury deliberation, we look at the supplementary instruction in the context of the entire charge and we do not require that the trial judge, when giving additional instructions, repeat all aspects of the original charge. *Commonwealth* v. *Sellon*, 380 Mass. 220, 233-234 (1980).

There was neither intimidation of jurors, commentary about disputed evidence, or any other element in the proceedings which could be said to have cast the judge in an adversary role. The heart of the matter is whether the second supplementary instruction suggested to the jury that they ought to retain the two verdicts at which they had earlier arrived. We think not. The judge, at the start of his second supplementary instruction, asked the jury to deliberate again on the counts upon which they had arrived at a verdict. Touching on the common factor of causation in leaving the scene and vehicular homicide, he told the jurors that "if you find the defendant, Kevin Diaz, not guilty of vehicular homicide, you must also find him not guilty of the offense of leaving the scene of an accident after causing personal injury." What followed was a rehearsing of the factual components the jurors were obliged to find to convict of leaving the scene; a tying together of common threads in the offenses charged, and finally: "I'm going to ask you to

return to your deliberations and again go over the facts of the situation as I have instructed you, and try to reach a verdict that would be consistent with the law as I have instructed you on it and with the facts obviously as you find them to be."

In the context of the whole charge, the judge's explanation of the inconsistency in the inchoate verdicts cannot fairly be construed as taking any aspect of the case from the jury. The charge is replete with references to the jury's role as the fact finder. As to the effect of doubt, he had told the jury in his first supplementary instruction that, "[i]f you're left in some doubt, at this point, then I say to you, the defendant is entitled to the benefit of that doubt and must be acquitted." We are of opinion that the judge adequately communicated to the jurors that he expected from them a reconsideration of the facts and not an automatic rendering of a verdict on the vehicular homicide complaint that would conform to the inchoate verdicts on driving to endanger and leaving the scene. There was no coercion of a particular result. Nor was the judge insistent upon a verdict on all three counts. He described agreement as "desirable" and "very desirable" but noted that "it is not absolutely necessary."

2. *The proximate cause charge.* A finding of ordinary negligence suffices to establish homicide by motor vehicle as defined in G. L. c. 90, § 24G. *Commonwealth* v. *Jones,* 382 Mass. 387, 389 (1981). *Commonwealth* v. *Burke,* 6 Mass. App. Ct. 697, 700-701 (1978). *Commonwealth* v. *Geisler,* 14 Mass. App. Ct. 268, 276 (1982). Cf. *Commonwealth* v. *Drew,* 11 Mass. App. Ct. 517, 523 (1981). It would seem to follow that if the jury's task is to find ordinary negligence, then the appropriate principles of causation to apply are those which have been explicated in a large body of decisions and texts treating the subject in the context of the law of torts. See *Commonwealth* v. *Geisler, supra* at 276, and cases and texts there cited.

The defendant draws on felony-murder and manslaughter cases to argue that the standard of causation applicable in a civil negligence action is not applicable in a vehicular homicide case. Proximate cause in felony-murder and manslaughter cases does, indeed, "entail a closer relationship between the result and

the intended conduct than proximate causation in tort law."
*Commonwealth'* v. *Bianco*, 388 Mass. 358, 373 (1983). See
*Commonwealth* v. *Rhoades*, 379 Mass. 810, 823-825 (1980).
Vehicular homicide under G. L. c. 90, § 24G, does not, how-
ever, require intended conduct. Cf. *Commonwealth* v. *Jones*,
382 Mass. at 390-391. The essence of the offense of vehicular
homicide is negligence, i.e., an unintended act, and the closer
relationship between result and conduct may not pertain. In
any event, the defendant received the benefit of a charge on
causation which faithfully followed the criteria approved in
the context of a felony murder case in *Commonwealth* v.
*Rhoades*, 379 Mass. at 824-825. The judge in the instant case
told the jury: "[T]he law defines, for purposes of this statute,
as a cause, a cause which in the natural and continuous sequence
produced the death and without which the death would not
have occurred . . . but for which[ ] the death would not have
occurred." The judge further instructed the jury that the defend-
ant's acts "need not be the sole cause" but that the jury "must
be satisfied that . . . his negligence was the efficient cause or
the cause that necessarily set in operation all of the factors
which ultimately caused the death of Mr. Cerrone." It would
not be sufficient to convict, the judge went on to say, if the
jurors were to find that the defendant's negligence "was only
a link, no matter how remote in the chain of events . . . leading
to Mr. Cerrone's death."

Finally, the judge explained as follows the idea of intervening
cause: "[I]f you should find on the facts that Mr. Grueter's
operation, or any other independent cause, intervened or got
in the way after the original negligence of Mr. Diaz and that
that could not have been foreseen by the defendant, then that
breaks the causal chain . . . and he [the defendant] cannot be
held criminally responsible for Mr. Cerrone's death."

We think the components of the judge's charge on causation
articulated satisfactory standards to guide the jury in finding
whether the manner in which Diaz operated his car resulted
in the fatality.

3. *Burden shifting*. The defense requested that the judge
charge the jury that "the burden is on the prosecution to prove to

a moral certainty and beyond a reasonable doubt that there was no intervening cause which led to Mr. Cerrone's death." It is the position of the defense that the refusal of the judge so to do, coupled with his telling the jury at one point that Diaz had a defense if he "could not have ever reasonably foreseen" the intervening action of Grueter, impermissibly placed on the defendant the burden of disproving an element of the crime charged. See *Sandstrom* v. *Montana*, 442 U.S. 510, 514 (1979); *Commonwealth* v. *Moreira*, 385 Mass. 792, 794 (1982).

As to the first asserted flaw, i.e., not telling the jury that the Commonwealth had the burden of proving the absence of an intervening cause, the answer is simply that the judge need not restate the burden of proof as to each element of each offense. See *Commonwealth* v. *Sellon*, 380 Mass. at 233. If the charge as a whole informs the jury that it is the Commonwealth's burden to prove all the elements of each crime, *Commonwealth* v. *Lowe*, 391 Mass. 97, 110-111 (1984), it is not error to decline to repeat the same thought at each turn, *Commonwealth* v. *Peters*, 372 Mass. 319, 324 (1977). The architecture of the charge in this case was that the judge first called to the jury's attention the allegations set forth in the complaints, which he said the Commonwealth had the burden to prove, and then discussed the elements of the three offenses. Thereafter he explained the Commonwealth's burden of proof, as well as the concept of reasonable doubt. The jurors were, thus, advised (indeed it was one of the last things to ring in their ears) that it was the prosecution's job to present evidence that the fatal action flowed naturally from the fashion in which Diaz was driving his car. That, perforce, would include finding the absence of an intervening cause, and it was not necessary to single out that particular consideration in the case. Cf. *Commonwealth* v. *Stokes*, 374 Mass. 583, 591 (1978), in which the court observed that a jury charge might well be sufficient if it "clearly placed the burden of proving malice beyond a reasonable doubt on the Commonwealth and contained other discussion which, although not referring to the burden of proof as to self-defense and reasonable provocation, adequately

defined those factors and established them as negating a finding of malice." See also *Lannon* v. *Commonwealth*, 379 Mass. 786, 791 (1980) (judge not required to charge the jury in explicit terms that the absence of a mitigating circumstance had to be proved by the Commonwealth). During the course of his first reinstruction the next day the judge twice restated the Commonwealth's burden to establish every element of each of the three offenses.

Concerning the use of "ever" in defining reasonable foreseeability, this was an isolated phrasing error in an otherwise proper charge. Indeed, the judge had correctly instructed on intervening cause three times before adding the embellishment "ever" the fourth time around. Compare *Commonwealth* v. *Peters*, 372 Mass. at 324-325. See *Commonwealth* v. *Doucette*, 391 Mass. 443, 451 (1984), in which the court observed that incorrect use of the term "presumption" was not reversible error when the charge as a whole negated any burden shifting.

*Judgments affirmed.*