COMMONWEALTH vs. LARS R. BERGGREN.

Barnstable. May 6, 1986. — August 26, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Motor Vehicle,* Operation, Homicide. *Proximate Cause.*

In a prosecution under G. L. c. 90, § 24G (*b*), for homicide by negligent operation of a motor vehicle, the standard of causation is the standard of proximate cause enunciated in the law of torts. [340]

In a prosecution for homicide by negligent operation of a motor vehicle so as to endanger public safety, proof that the defendant, on his motorcycle, led a high-speed, nighttime chase during which the pursuing police officer lost control of his cruiser and was killed, would be sufficient to support a conviction under G. L. c. 90, § 24G (*b*), where, in the circumstances, the officer's pursuit and the likelihood of serious injury were foreseeable consequences and where the death was a result of the natural and continuous sequence of events caused by the defendant's actions. [341]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on July 6, 1983.

In the jury session of that division a question of law was reported to the Appeals Court by *Roger B. Champagne,* J. The Supreme Judicial Court transferred the case on its own initiative.

*John M. Connolly* for the defendant.

*Don L. Carpenter,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant is awaiting trial before a jury of six in the Barnstable Division of the District Court on a complaint charging him with motor vehicle homicide by negligent operation of a motor vehicle so as to endanger public safety (G. L. c. 90, § 24G (*b*) [1984 ed.]).[1] The District Court judge

[1] He was also charged with operating negligently *to endanger* (G. L. c. 90, § 24), and failing to stop for a police officer G. L. c. 90, § 25). The

granted the joint motion to "report an issue" to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the report here on our own motion.

We summarize the stipulated facts. On March 29, 1983, about 8:28 P.M., Patrolman Michael Aselton of the Barnstable police department was on radar duty at Old Stage Road in Centerville. He saw the defendant's motorcycle speed by him and commenced pursuit in a marked police cruiser with activated warning devices. The defendant "realized a cruiser was behind him but did not stop because he was 'in fear of his license.' " The pursuit lasted roughly six miles through residential, commercial and rural areas. At one point, the defendant had gained a 100 yard lead and crossed an intersection, continuing north. The patrolman's cruiser approached the intersection at about "76 m.p.h. minimal" and passed over a crown in the roadway which caused the patrolman to brake. The wheels locked and the cruiser slid 170 yards, hitting a tree. Patrolman Aselton died as a result of the impact. The defendant had no idea of the accident which had occurred behind him. "No other vehicles were in any way involved in the causation of the accident." The stipulation further states that the decision to terminate a high-speed chase "is to be made by the officer's commanding officer." No such decision to terminate the pursuit had been made at the time of the accident. The Barnstable police department determined that patrolman Aselton died in the line of duty.

We understand the report to raise the question[2] whether the stipulated facts would be sufficient to support a conviction of

stipulated facts also state that a complaint issued for failure to stay within marked lanes (G. L. c. 89, § 4A). Neither the docket nor the sworn complaint, however, indicates that a complaint issued for this fourth charge.

[2] The report states: "A request is hereby made by the Commonwealth and the defendant to have the Court report an issue to the Appeals Court pursuant to Rule 34.

"ISSUE: Whether or not the Defendant 'caused' the death, as a matter of law, under M.G.L. Chapter 90, Section 24G, where the [Defendant] was operating a motorcycle at high speeds through residential areas and the Officer, while pursuing the defendant, lost control of his cruiser and died

motor vehicle homicide by negligent operation under G. L. c. 90, § 24G (b).³ We hold that it is.

A finding of ordinary negligence suffices to establish a violation of § 24G. *Commonwealth* v. *Jones,* 382 Mass. 387, 389 (1981), and cases cited. *Commonwealth* v. *Diaz,* 19 Mass. App. Ct. 29, 36 (1984). See 20 A.L.R. 3d 473, 476-479 (1968), and cases collected (A showing of ordinary negligence has generally been held or recognized as sufficient to convict an accused under a "vehicular negligent homicide statute" where [as in Massachusetts] the term "negligence" appears without qualification or modification). The Appeals Court has observed: "It would seem to follow that if the jury's task is to find ordinary negligence, then the appropriate principles of causation to apply are those which have been explicated in a large body of decisions and texts treating the subject in the context of the law of torts." *Commonwealth* v. *Diaz, supra.* See *Commonwealth* v. *Geisler,* 14 Mass. App. Ct. 268, 276 (1982); *Commonwealth* v. *Burke,* 6 Mass. App. Ct. 697, 699-700 & n.3 (1978). The defendant argues, however, that the "causation theory properly applied in criminal cases is not that of proximate cause." *Commonwealth* v. *Lang,* 285 Pa. Super. 34, 42-43 (1981), citing *Commonwealth* v. *Root,* 403 Pa. 571, 576-580 (1961), and *Commonwealth* v. *Redline,* 391 Pa. 486, 504-505 (1958). If this theory has any application in this Commonwealth (see *Commonwealth* v. *McLeod,* 394 Mass. 727, 735 [1985]; *Commonwealth* v. *Rhoades,* 379 Mass. 810, 824 [1980]), it does not apply to a charge of negligent vehicular homicide. We adopt instead the suggestion of the Appeals Court and conclude that the appropriate standard of causation to be applied in a negligent vehicular homicide case under § 24G is that employed in tort law.

---

as a result of colliding with a tree.

"REASON FOR REQUEST: It is the Commonwealth's and the defendant's position that the above issue presents a novel issue relative to causation in a criminal case and that this issue should be resolved prior to trial so that proper jury instructions may be framed for the trial of the defendant."

³ For the purposes of the report the defendant apparently concedes all of the elements of negligence except causation.

The defendant essentially contends that since he was one hundred yards ahead of the patrolman's cruiser and was unaware of the accident, the resulting death of the patrolman cannot be viewed as directly traceable to the defendant's conduct. [4] The defendant, however, was speeding on a motorcycle at night on roads which his attorney at oral argument before this court characterized as "winding" and "narrow." He knew the patrolman was following him, but intentionally did not stop and continued on at high speeds for six miles. From the fact that the defendant was "in fear of his license," it may reasonably be inferred that he was aware that he had committed at least one motor vehicle violation. Under these circumstances, the defendant's acts were hardly a remote link in the chain of events leading to the patrolman's death. *Commonwealth* v. *Rhoades, supra* at 824. The officer's pursuit was certainly foreseeable, as was, tragically, the likelihood of serious injury or death to the defendant himself, to the patrolman, or to some third party. The patrolman's death resulted from the "natural and continuous sequence" of events caused by the defendant's actions. *Commonwealth* v. *McLeod, supra* at 735-736.[5]

---

[4] The defendant suggests that a consideration of the chase route would "lead a reasonable person to conclude that the officer himself or his superior was foolhardy and negligent to allow the 'chase' to go on at such length and at such speeds" and stresses the fact that no decision to terminate the chase had been made by the time of the accident. Any discussion of alleged contributory negligence is inapposite, since contributory negligence would not excuse the defendant's conduct under § 24G. See *Commonwealth* v. *Campbell*, 394 Mass. 77, 87 (1985).

[5] We find the reasoning in *Commonwealth* v. *Lang*, 285 Pa. Super. 34 (1981), compelling. The court reversed the order of a trial court judge which had quashed an information charging the defendant with homicide by motor vehicle for the death of a police officer during a high speed chase. The defendant had been speeding on his motorcycle and attempting to evade arrest. The court held that it was for the jury to decide whether the defendant's conduct directly resulted in the officer's death when the officer's car hit a tree during the chase and was not a fortuitous or coincidental event, unrelated to a direct result of the defendant's conduct. This situation was distinguished from "drag racing" as one in which "two 'civilians' had freely and voluntarily engaged in a race . . . here, we are dealing with one 'civilian' and a police officer. Having observed Lang speeding, Officer Redding was duty-bound to pursue him, which duty arguably became more compelling with each

We conclude that the proper standard of causation for this offense is the standard of proximate cause enunciated in the law of torts. We further conclude that, should the jury find the facts as stipulated in the instant case, and should the only contested element of the offense of motor vehicle homicide by negligent operation be that of causation, these facts would support a conviction under G. L. c. 90, § 24G (*b*).

---

Vehicle Code violation. In a sense, Officer Redding was bound as if by a chain to Lang's vehicle; and, at the speed Lang was travelling, it was foreseeable the chain would break, hurtling Officer Redding to his death. Lang knew or should have known that his actions, speeding and attempting to elude arrest, were likely to result in injury to someone: either to himself, to some innocent third party, or to the pursuing police officer. . . . a jury could reasonably conclude, beyond a reasonable doubt, that Lang's conduct *directly* resulted in Officer Redding's death and was not a fortuitous or coincidental event unrelated to the direct result of his conduct" (footnotes omitted, emphasis in original). *Commonwealth* v. *Lang, supra* at 44.